[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on February 8, 1958 at Bridgeport, Connecticut. They have resided continuously in this state since that time. There are no minor children issue of the marriage.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground on January 2, 1998.
The court has carefully considered the criteria set forth in §§ 46b-81, 46b-82, 46b-62 of the Connecticut General Statutes in reaching the decisions reflected in the orders that follow.
The parties have been married 39 years. The plaintiff will be 61 years of age on December 22, 1997. Her mental health is fragile. The plaintiff took on the traditional role of homemaker, raising their child and caring for the home and the defendant. She worked in the defendant's business for a period of time on an as needed basis. The plaintiff was devastated by the defendant's extra-marital relationships. She was a patient at Elmcrest in the spring of 1993. The plaintiff is presently under the care of a Psychotherapist and takes medication for anxiety, insomnia as recurrent, requires medication management.
The defendant is 60 years of age. He is employed as a Consultant with Mucherino Brothers, Inc., a company he started with his brother Nicholas. The plaintiff and defendant started out with very little. Through hard work, careful budgeting and a modest life style, they have been able to accumulate the assets as reflected on their financial affidavits.
Although the marriage was characterized by ups and downs, the plaintiff was unable to cope with what she perceived as the defendant's infidelities. The parties separated and reconciled and separated again. But for the defendant's association with another, the parties, in all likelihood, would have celebrated their 40th anniversary together.
No useful purpose would be served by a review of all the CT Page 13069 evidence presented in this matter, including the deposits into the checking account, and the large sums of cash, in the safe, taken in and out by the parties. Volumes could be written as to where this cash went to, along with the missing furnace. Other than the O'Connell loan, the court is going to leave the parties where they are.
The court makes no orders as to the division of the livestock on the premises. The parties are urged to make their own agreement as to the disposition of the animals.
Unfortunately the parties have been unable to resolve their marital difficulties. It would appear and the evidence presented indicates that the greater fault for the cause of the breakdown must be attributed to the defendant.
The following orders shall enter and shall be effective as of January 2, 1998.
The applicable Pendente Lite orders shall remain in effect until that time.
1. Real Estate — Marital — Home
The defendant shall forthwith transfer and quitclaim all his right, title and interest in and to the premises located at 155 Maple Tree Hill, Oxford, Connecticut to the plaintiff. The defendant shall be responsible for the December 1997 mortgage payment which includes the taxes, as well as all the household bills including all utilities and including necessary repairs through December 31, 1997. The defendant shall vacate the premises on January 2, 1998 and thereafter the plaintiff shall be entitled to sole and exclusive use of the premises. The defendant shall be entitled to remove his personal belongings from the marital home including his clothing, jewelry and personal effects.
In the event the plaintiff shall sell the marital residence, the defendant shall be entitled to the sum of $25,000, from the net proceeds of any such sale. The decision to sell shall be at the sole discretion of the plaintiff.
2. Naugatuck Property
The plaintiff shall forthwith quitclaim all her right, title CT Page 13070 and interest in and to the premises located at 49 Kent Street, Naugatuck, Connecticut to the defendant. The defendant shall hold the plaintiff harmless from any and all liability with respect to the mortgage, taxes and insurance on said property. The defendant indicated this property had an equity of approximately $26,482.
3. Florida Property
The property locate at 180 Cypress Way, Naples, Florida shall be placed on the market for sale immediately. The net proceeds of said sale shall be the sole property of the defendant. The defendant indicates this property had a value of $70,000 subject to taxes and common charges of $2688.63. The plaintiff shall be entitled to any of her personal property contained in said condo. The defendant shall be responsible for any carrying costs until this property is sold.
Other Property
1. The Life USA Holding, Inc. in the approximate amount of $47,991. shall be liquidated immediately. From said net sum, the plaintiff shall receive counsel fees in the amount of $7500., plus costs of $1500. In addition, the Valley Mental Health bill of $200. shall be paid as well as any unreimbursed medical bill owed to Dr. Cooke and Dr. Sureddi. The remaining balance of said proceeds shall be the sole property of the defendant.
2. The $100,000. Life USA policy having a cash value of approximately $46,691.48 shall be liquidated forthwith. Said proceeds shall be used to pay off in full the mortgage on 155 Maple Tree Hill, Oxford, Connecticut as of January 2, 1998, in the approximate amount of $6500. The remaining balance of said proceeds shall be the sole property of the plaintiff.
3. The Bank of Boston Savings Account in the approximate amount of $15,814.29 shall be equally divided between the parties.
4. The Fleet Bank Custodial Accounts shall be liquidated forthwith and the proceeds shall be equally divided between the parties.
5. The Federal Teamsters FCU Savings Account of approximately $1034.65 shall be equally divided between the parties. CT Page 13071
6. The parties have the following IRA Accounts:
IDS Life/American Express (H) $9310.43
Delaware Group (H) 1608.22
First Interstate Bank (H) 4652.71
American Express (W) 2621.98
TOTAL $18,193.34
Said IRA's shall be divided and transferred so that each party has $9096.67 in IRA's.
7. The ITT Flexible Premium Annuity in the amount of $1643.58 shall be the sole property of the plaintiff.
8. The Fleet Bank Custodian CD Account with Marissa in the amount of $2723.59 shall be liquidated when it matures and the proceeds shall be equally divided between the parties.
9. The defendant shall be entitled to his office's Loan Account in the approximate amount of $20,000.
10. The 1986 Camper shall be the sole property of the defendant. The plaintiff shall be entitled to her personal belongings in the camper.
11. The parties shall equally divide the Bank Atlantic debt and shall equally share in any future recovery.
12. The 1995 tax refund of $1400 being held in escrow shall be the sole property of the plaintiff and shall be released to her forthwith. The 1995 and 1996 tax refunds have already been divided.
13. It is contemplated that the parties will file joint 1997 Federal/State Income Tax Returns. Any refunds from said returns shall be equally divided between the parties.
14. The defendant shall be entitled to the cash value of the $7500 Life USA Policy in the approximate amount of $1811.32.
15. The defendant shall pay to the plaintiff a lump sum of CT Page 13072 $6000 representing one-half of the loan to O'Connell taken from the marital funds. Said sum shall be paid to the plaintiff on or before February 15, 1998. The defendant shall be entitled to collect and retain the debt due and owing from the O'Connell's.
Life Insurance
The Defendant shall maintain at his expense the Life Insurance policy with his Union in the amount of $12000. and the USA Life Policy in the amount of $75,000 and shall name the plaintiff as irrevocable beneficiary on each policy for so long as the defendant has an alimony obligation or other financial obligation to the plaintiff.
Alimony
1. The defendant entered into a Sale and Purchase of Shares of Stock and Consultant Employment Contract on September 20, 1995. The plaintiff also turned over her shares of Stock to the corporation, Mucherino Bros., Inc., at that time. The defendant is entitled to compensation for four years from September 20, 1995, receiving a gross of $962 per week and a net of $545 per week. In addition, the corporation continues to add to his pension and provides medical benefits, and other fringe benefits.
2. For so long as the defendant receives a payment from Mucherino Brothers, Inc., for the remaining duration of the four year stock/sale purchase agreement of September 20, 1995; the defendant shall pay to the plaintiff the sum of $225 per week as alimony. Said alimony shall continue until the death of the plaintiff, her marriage or cohabitation as defined by statute or upon the defendant's retirement.
3. Upon the retirement of the Defendant, the alimony award shall be reduced to a dollar a year and thereafter the defendant shall pay to the plaintiff one-half of the monthly teamster's pension amount which the defendant shall receive on the date of his retirement. In addition, the plaintiff shall receive one-half of the defendant's social security benefit which he receives on the date of his retirement.
4. The parties shall cooperate and shall sign such documents as are necessary to effectuate an equal division of said pension and said defendant's social security award. CT Page 13073
5. The plaintiff shall be entitled to any social security benefits she is entitled to receive under her own social security.
COBRA
The plaintiff shall be entitled to COBRA benefits as are available through the defendant's employment. The defendant shall pay one-half the cost of the COBRA benefits until such time as the plaintiff obtains Medicare coverage at age 62.
Personal Property
1. The plaintiff shall be entitled to the furnishings and furniture located at the marital residence.
2. The plaintiff shall be entitled to the 1988 Lincoln town car motor vehicle.
3. The defendant shall be entitled to the 1994 Lincoln motor vehicle.
Jurisdiction
The Court shall retain jurisdiction to enforce all orders of the court.
Restoration of Maiden Name
The plaintiff shall be entitled to the restoration of the use of her maiden name of Norma Blantin.
COPPETO, J.